DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| E. & J. Gallo Winery, | ) | |
| | ) | CASE NO. 5:05 CV 1927 |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Esber Beverage Company, | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

Before the Court is the defendant's motion to dismiss for lack of subject matter jurisdiction.  (Doc. No. 14).[1]  The plaintiff has filed its memorandum in opposition (Doc. No. 29) and the defendant has filed a reply (Doc. No. 33).[2]  The motion to dismiss is granted; however, for the reasons given in the Conclusion, *infra*, the Court will defer issuing a final Judgment Entry of dismissal without prejudice until after the status conference scheduled for February 21, 2006.


## I.  BACKGROUND

On August 4, 2005, plaintiff E. & J. Gallo Winery ("Gallo"), a California corporation with its principal place of business in Modesto, California, filed its Complaint for Declaratory Judgment and Other Relief against Esber Beverage Company ("Esber"), an Ohio corporation. (Complaint, Doc. No. 1).  Gallo claimed that the amount in controversy for purposes of diversity

---

[1]  The motion is improperly captioned as a motion to remand or, in the alternative, to dismiss.  Since this action was not removed, there is no basis for remand.

[2]  Following the Case Management Conference on October 20, 2005, the Court called for a one-month "time out" to allow the parties an opportunity to settle this matter.  Those efforts were unsuccessful, as were efforts to obtain a joint request for mediation.

(5:05 CV 1927)

jurisdiction exceeded $75,000.  (Compl. ¶ 4).  However, the relief sought was primarily

declaratory and injunctive in nature, with the exception of a prayer for unspecified "damages and

costs" and "such other relief as this Court may deem appropriate."

The gravamen of the Complaint is that Gallo wants this Court to declare that it did not act

in violation of Ohio's Alcoholic Beverages Franchise Act ("the Act") (OHIO REV. CODE §

1333.82 through § 1333.87) when it gave notice to Esber on April 12, 2005 that it would not be

appointing Esber as a distributor for Gallo.  (Compl. ¶ 12).  Esber allegedly had "an unwritten

and informal business relationship" with Grape Links, Inc. ("GLI") whose stock was acquired by

Gallo on January 14, 2005.  (Compl. ¶¶ 9-11).  Despite Gallo's written notice to Esber, Esber

allegedly failed to honor the notice, has continued to "attempt to sell Gallo products, and has

threatened litigation against Gallo claiming wrongful termination of a franchise relationship

between Esber and GLI."  (Compl. ¶ 13).  It is Gallo's view that there never was a franchise

relationship and that the Act does not apply but that, in the event the Act does apply, Gallo has

not violated it.

In addition to its motion to remand or dismiss, Esber filed an Answer and a Counterclaim

(Doc. No. 13) asserting several defenses including that exclusive jurisdiction over this dispute

lies with the Stark County Court of Common Pleas.  (Answer ¶ 1; see OHIO REV. CODE §

1333.87).  On its Counterclaim alleging violations of the Act, intentional interference with a

business relationship, and promissory estoppel, Esber seeks compensatory damages "in excess of

$250,000[.]"

2

(5:05 CV 1927)

## II.  DISCUSSION

Although Gallo has filed an action seeking only declaratory relief, it does not rest jurisdiction on the Declaratory Judgment Act under which this Court would have discretion as to whether to exercise jurisdiction.  <u>See</u> 28 U.S.C. § 2201.  Rather, Gallo asserts diversity jurisdiction under 28 U.S.C. § 1332.  (Compl. ¶ 3).

Esber argues both that this Court lacks diversity jurisdiction due to an insufficient amount in controversy and, even more so, that the Court should abstain from resolving a controversy over which Ohio courts, in Esber's view, have exclusive jurisdiction.

### A.  Diversity Jurisdiction

There is no doubt that the citizenship of the two parties is diverse; in question is the requisite $75,000 amount in controversy.  "The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that . . . the sum claimed by the plaintiff controls if the claim is apparently made in good faith.  It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.  . . .  But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed."  <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S. 283, 288-89 (1938) (footnotes omitted).

3

(5:05 CV 1927)

While it is true that Gallo's Complaint generally alleges the requisite $75,000 jurisdictional amount, there are no facts alleged in the Complaint which would support that amount. In its brief in opposition to defendant's motion to dismiss, Gallo argues that the value of a declaratory judgment action must be measured by the "value of the object of the litigation" (Brief in Opposition, Doc. No. 29 at 4, quoting Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977)), and that this value "is determined by objectively evaluating, from [Gallo's] perspective, the economic rights that [Gallo] seeks to protect or the potential injury that [Gallo] seeks to prevent." (Brief at 4, citing Woodmen of the World v. Scarbro, 129 Fed.Appx. 194, 195-96, 2005 Fed.App. 0293N (6th Cir. Apr 18, 2005) (per curiam)). Gallo seeks a declaration that it owes no duties to Esber and it claims that, if it is wrong and cannot get such a declaration, "it might be subject to liability for various common law and statutory claims." (Brief at 5). It values these liabilities "in excess of $230,000," the damages claimed by Esber in its counterclaim.

While it is true that Scarbro, supra, counsels this Court to determine the value of Gallo's declaratory judgment claim by reference to the potential injury Gallo seeks to prevent, this Court does not find Scarbro to be on point factually.

In Scarbro, a life insurance claimant filed suit in state court seeking to recover the $20,000 proceeds of a life insurance policy which the insurance company was refusing to pay because it concluded that the insurance application had contained false information. The claimant's state court lawsuit also sought punitive damages, attorney fees and costs. In response to the state court lawsuit, the insurance company filed a declaratory judgment action in federal

4

(5:05 CV 1927)

court, seeking an order that the dispute was subject to arbitration under the terms of the

insurance contract.  The district court dismissed the action, finding a lack of the requisite amount

in controversy and refusing to consider the value of the underlying state action.  The Sixth

Circuit reversed and remanded for the district court to consider whether the declaratory judgment

claim of the insurance company was really for less than the jurisdictional amount, "tak[ing] into

consideration the value of the underlying state court litigation."  Scarbro, 129 Fed.Appx. at 196.

      Scarbro is distinguishable.  In Scarbro, at the time the declaratory judgment complaint

was filed, the insurance claimant had already filed an underlying state court lawsuit seeking

insurance proceeds of $20,000 plus punitive damages, fees and costs.  In the instant declaratory

judgment action, there is no underlying state lawsuit for this Court to take into consideration

when placing a value on this action.

      Gallo argues, in reliance on Scarbro, that this Court should consider the value of its claim

to be "in excess of $230,000" because that it the prayer in Esber's *counterclaim*.  This would

turn on its head the rule that the amount in controversy is measured at the time the complaint is

filed.  See Klepper v. First Am. Bank, 916, F.2d 337, 340 (6th Cir. 1990).  Scarbro is not to the

contrary.

      The Court concludes that Gallo's declaratory judgment action does not satisfy the

requirements of a suit in diversity and, therefore, this Court lacks subject matter jurisdiction.  For

that reason alone, the case should be dismissed.

(5:05 CV 1927)

**B.  Abstention**

In the event a higher court would determine that there is subject matter jurisdiction, the Court believes it is necessary to address Esber's second argument, namely, that this Court, even if it has jurisdiction, should abstain.

In making this argument, Esber relies on some case law that is not particularly helpful. First, Esber cites Tri-County Distributors, Inc. v. Canandaigua Wine Co., Inc., 68 Ohio St.3d 123, 129 (1993) for the proposition that actions arising under the Act lie within the exclusive jurisdiction of the Ohio Courts of Common Pleas.  Even if this Court were to accept that a State statute could divest a federal court of diversity jurisdiction, which it does *not* accept, Tri-County Distributors would not be a case on point since it did not address the issue of exclusive jurisdiction.  In Tri-County Distributors, the Supreme Court of Ohio was examining whether a franchise relationship existed merely because there was a written contract between a manufacturer and a distributor.  Finding no such relationship created by the written contract, the court concluded that it need not consider whether a forum-selection provision in the relevant contract, which set New York as the forum for all disputes under the contract, was in conflict with the exclusive jurisdiction provision of the Act.  Tri-County Distributors, therefore, supplies no guidance.

Esber also points to Esber Beverage Co. v. Diageo North America, Inc., No. 5:02cv2067, Doc. No. 17 at 4 (N.D. Ohio Oct. 23, 2002) (Gwin, J.) for the same "exclusive jurisdiction" proposition.  This case, however, was remanded to the Stark County Court of Common Pleas

6

(5:05 CV 1927)

solely because complete diversity among the parties was lacking.  Although the court mentioned

the exclusive jurisdiction provision of the Act, it was not ruling on that issue.

Although the above two cases supply no guidance, the third case relied upon by Esber is

instructive.  In Superior Beverage Co., Inc. v. Schieffelin & Co., Nos. 4:05cv834, Doc. No. 36 at

13 (N.D. Ohio May 31, 2005) (Economus, J.), another branch of this court decided to abstain,

dismissing without prejudice a case which had been originally filed in federal court.[3]  In reaching

the conclusion to abstain,[4] Judge Economus convincingly set forth his reasons, which this Court

now adopts.  He wrote:

> The United States Supreme Court repeatedly has admonished the federal
> courts to respect the efforts of state governments to ensure uniform treatment of
> essentially local problems.  See Quackenbush v. Allstate Ins. Co., 517 U.S. 706,
> 728 (1996); Thibodaux, 360 U.S. at 28 (Stewart, J., concurring).  Principles of
> federalism and comity require no less.  See Quackenbush, 517 U.S. at 728.
> Federal courts should thus "exercise their discretionary power with proper regard
> for the rightful independence of state governments in carrying out their domestic
> policy."  Burford v. Sun Oil Co., 319 U.S. 315, 318 (1943) (internal quotation
> marks omitted).  And the federal judiciary should accordingly abstain from
> deciding cases (1) that present "difficult questions of state law bearing on policy
> problems of substantial public import whose importance transcends the result in
> the case then at bar" or (2) whose adjudication in a federal forum "would be

---

[3]  Judge Economus also remanded a second case which had been removed.  The two cases had been
consolidated for pre-trial purposes.  In Superior Beverage Co., Inc. v. Schieffelin & Co., Case No. 4:05cv834,
Superior filed its action directly in federal court asserting diversity jurisdiction.  The second case, Goodman
Beverage Co., Inc., et al. v. Schieffelin & Co., Case No. 1:05cv868, had been filed in the Lorain County Court of
Common Pleas and removed to federal court.  In both cases, it was the franchisees who sued to stop the franchisor
from terminating their franchises.  In both cases, contractual damages were sought as well as injunctive and
declaratory relief.
    In contrast, the instant case has been brought by the franchisor seeking a declaration that there is no
franchise but that, if there is, it has been legitimately terminated.

[4]  Before deciding to abstain, Judge Economus also addressed the issue of the federal court's subject matter
jurisdiction.  He noted that, although he was "inclined to interpret section 1333.87 as vesting exclusive jurisdiction
in the Ohio courts of common pleas . . . ," the "dearth of Ohio authority interpreting this statute [also] counsels
against this federal Court from injecting its interpretation into this paramount issue of state interest."  Case No.
4:05cv834, Doc. No. 36 at 14.

(5:05 CV 1927)

disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."  New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361 (1989) (NOPSI) (internal quotation marks omitted). Though "abstention from the exercise of federal jurisdiction is the exception, not the rule," Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976), its importance in our system of dual sovereignty cannot be underestimated.  It safeguards our federal system from the "delay, misunderstanding of local law, and needless conflict with a state policy" that inevitably result from federal judicial intrusions into areas of core state prerogative.  Burford, 319 U.S. at 327.  Accordingly, federal courts have the power to refrain from hearing cases that would interfere with a pending state criminal proceeding, see Younger v. Harris, 401 U.S. 37 (1971), or with certain types of state civil proceedings, see Huffman v. Pursue, Ltd., 420 U.S. 592 (1975); Juidice v. Vail, 430 U.S. 327 (1977); cases in which the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law, see Railroad Comm'n of Tex. v. Pullman Co., 312 U.S. 496 (1941); cases raising issues "intimately involved with [the States's] sovereign prerogative, "the proper adjudication of which might be impaired by unsettled questions of state law, see Thibodaux, 360 U.S. 25, 28 (1959); cases whose resolution by a federal court might unnecessarily interfere with a state system for the collection of taxes, see Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293 (1943); and cases which are duplicative of a pending state proceeding, see Colorado River, 424 U.S. 800 (1976); Pennsylvania v. Williams, 294 U.S. 176 (1935).

This Court has ordered the present parties to address the issue of Thibodaux abstention.  In Thibodaux, 360 U.S. 25, the plaintiff city had filed a petition for expropriation in state court, asserting a taking of land, buildings, and equipment of the defendant company.  See id. at 26.  After the defendant removed the case to federal court based on diversity jurisdiction, the federal court stayed the action to afford the supreme court of Louisiana the opportunity to address the previously uninterpreted state statute on which the city had based its expropriation.  See id. at 26.  The United States Supreme Court noted that the district judge had responded "sensibly" to the problem facing him because an opinion of the state attorney general had recently held, in a "strikingly similarly case," that another Louisiana city did not possess the same power that the plaintiff city in Thibodaux claimed to have.  See Thibodaux, 360 U.S. at 30.  At the same time, however, the uninterpreted state statute at issue appeared to grant the city such power.  See id.  In affirming the district court's decision to abstain, the Thibodaux Court stated:

8

(5:05 CV 1927)

> The special nature of eminent domain justifies a district judge,
> when his familiarity with the problems of local law so counsels
> him, to ascertain the meaning of a disputed state statute from the
> only tribunal empowered to speak definitively -- the courts of the
> State under whose statute eminent domain is sought to be
> exercised -- rather than himself make a dubious and tentative
> forecast.

Id. at 29.

Several courts addressing Thibodaux have reasoned that the case "is really a variant of the Burford abstention doctrine and has not evolved as a separate doctrine of its own." Grode v. Mutual Fire, Marine and Inland Ins. Co., 8 F.3d 953, 957 (3rd Cir.1993). In Burford, 319 U.S. 315 (1943), the plaintiff brought an action in federal court challenging the "reasonableness" of a decision by the Texas railroad commission to grant an oil drilling permit to the defendant oil company. See id. at 316-317. Through its complaint, the plaintiff sought to have the federal court determine whether the state railroad commission had properly applied Texas' complex oil and gas conservation regulations. See id. at 331. The defendant argued that the federal court should abstain from deciding the case because the state of Texas had an established, centralized system of review whereby state courts with "specialized knowledge" of the regulations governing the oil industry would handle review of the railroad commission's decisions. Id. at 327. Finding this system of state court review "expeditious and adequate," the Supreme Court held that federal court review of commission decisions would result in "delay, misunderstanding of local law, and needless federal conflict with the state policy[.]" Id. at 334. The Court concluded that "a sound respect for the independence of state action required the federal equity court to stay its hand[.]" Id. at 334.

It is against this backdrop that the Court now confronts the cases *sub judice*. The Court initially acknowledges "the undisputed constitutional principle that Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds." Id. at 359 (citing Kline v. Burke Constr. Co., 260 U.S. 226, 234 (1922)). Thus, this Court has a strict duty to exercise the jurisdiction that is conferred upon it by Congress. See, e.g., Colorado River, 424 U.S. at 821 ("Federal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them"); Wisconsin v. Constantineau, 400 U.S. 433, 439 (1971) ("We would negate the history of the enlargement of the jurisdiction of the federal district courts, if we held the federal court should stay its hand and not decide the question before the state courts decided it."); Meredith v. City of Winter Haven, 320 U.S. 228, 234-35 (1943) ("Denial of [the

9

(5:05 CV 1927)

opportunity to decide questions of state law] by the federal courts merely because the answers to the questions of state law are difficult or uncertain or have not yet been given by the highest court of the state, would thwart the purpose of [diversity jurisdiction].").  However, federal courts may decline to exercise their jurisdiction in otherwise "exceptional circumstances," where denying a federal forum would clearly serve an important countervailing interest, <u>Colorado River</u>, 424 U.S. at 813 (quoting <u>County of Allegheny v. Frank Mashuda Co.</u>, 360 U.S. 185, 189 (1959)), for example where abstention is warranted by considerations of "proper constitutional adjudication," "regard for federal-state relations," or "wise judicial administration," <u>Colorado River</u>, 424 U.S. at 817 (internal quotation marks omitted).

In the present matters, the Twenty-first Amendment to the Constitution of the United States establishes the state interest at issue -- namely, the right of the state to control the importation and sale of alcoholic beverages within its border. <u>See</u> U.S. Const. amend XXI.  The states possess broad authority under the Twenty-first Amendment (which repealed national prohibition of the sale of alcoholic beverages), as well as inherent police powers, to regulate, restrict, or ban the sale of alcoholic beverages within their borders.  <u>See generally</u> <u>Granholm v. Heald</u>, 125 S.Ct. 1885 (2005); <u>44 Liquormart, Inc. v. Rhode Island</u>, 517 U.S. 484, 514-15 (1996).  The authority vested to the states by the Twenty-First amendment extends beyond the regulation of alcohol to include issues intertwined with its sale and use.  <u>See, e.g.</u>, <u>New York State Liquor Authority v. Bellanca</u>, 452 U.S. 714, 718 (1981) (holding that state has authority to prohibit or to regulate topless dancing in liquor-licensed establishments).

The State of Ohio has established an intricate regulatory regime to govern the sale and importation of alcoholic beverages within its borders.  <u>See, e.g.</u>, Ohio Rev. Code §§ 4301-4399. The Act is an integral part of this regulatory environment.  (footnote omitted).

It follows *a fortiori* that these cases are not, as the defendant suggests, "ordinary diversity cases involving ordinary questions of law and fact similar to questions of fact and law resolved by other courts."  (Dkt. # 28 at 2.)  Here, the United States Constitution, as amended by the Twenty-first Amendment, vests the states with virtually unfettered authority to regulate the subject matter of the present disputes.  An examination of precedent addressing the import of the Twenty-first Amendment suggests that the federal courts will intervene in this area of state prerogative only where the state's conduct potentially infringes on other constitutional rights.  <u>See, e.g.</u>, <u>Granholm</u>, <u>supra</u> (Commerce Clause); <u>Bellanca</u>, 452 U.S. at 718 (First Amendment); <u>North Dakota v. United States</u>, 495 U.S. 423 (1990) (Supremacy Clause); <u>Larkin v. Grendel's Den, Inc.</u>, 459 U.S.

10

(5:05 CV 1927)

116, 122, n. 5 (1982) (Establishment Clause); <u>Craig v. Boren</u>, 429 U.S. 190, 209 (1976) (Equal Protection).  As the parties concede that this matter does not give rise to any constitutional rights save the diversity statute, the Twenty-first Amendment compels this Court to afford substantial deference to the state's interest in resolving this matter.

The Court is mindful that federal courts, including the United States Court of Appeals for the Sixth Circuit (albeit in an unreported decision), have addressed cases arising under the Act notwithstanding the force of the Twenty-first Amendment.  However, four factors render the state interests present in case pending before this Court distinguishable from those prior courts' sporadic applications of the Act.

First, as discussed *supra*, only three federal cases have addressed the Act since the amendment to section 1333.87's jurisdictional provision.  <u>See</u> <u>Dayton Heidelberg Distrib. Co.</u>, 108 F.Supp.2d 859 (S.D.OH.), <u>aff'd</u>, No. 01-4061, 2003 U.S.App. LEXIS 17936 (6th Cir. Aug. 25, 2003); <u>Jameson Crosse, Inc.</u>, 917 F.Supp. 520.  No federal case has addressed the import of this apparent grant of exclusive jurisdiction to the state courts.  Whether the Ohio legislature attempted to vest exclusive jurisdiction over claims arising under the Act in the Ohio courts of common pleas, and the potential the consequences of the amendment (i.e., whether the amendment violates Ohio's one-subject rule, whether the parties to a franchise may contract around the Act by utilizing a forum selection clause) are questions that federal-state comity requires achieve initial resolution in Ohio's courts.

Secondly, Schieffelin & Co. advances the defense that the Act does not provide for the injunctive relief sought by the parties.  <u>See</u> (Dkt. # 23 at 2-4; Dkt. # 31 at 5-9).  In so doing, Schieffelin & Co. relies exclusively on the statutory text as well as the Ohio General Assembly's purported intentions when enacting several amendments to the statute.  <u>See</u> (Dkt. # 23 at 2-4).  Again, no court has addressed the issue advanced by the defendant -- specifically, whether section 1333.87's reference to "damages or other such relief" includes injunctive relief.  The question as to whether the Ohio General Assembly intended to provide for injunctive relief for violations of the Act is best left to the Ohio courts.

Thirdly, the substantive issues presented in this case heretofore have not been addressed by any court.  Schieffelin & Co. initially purported to terminate the plaintiffs' franchises pursuant to section 1333.85(d), which affords a "successor manufacturer" with the right to terminate a franchise relationship absent "just cause."  <u>See</u> OHIO REV. CODE § 1333.85(D).  The parties dispute whether the termination of S & S rendered Schieffelin & Co. a "successor

11

(5:05 CV 1927)

manufacturer" pursuant to the Act. This Court finds no authority interpreting "successor manufacturer." The plain text of the statute reveals, however, that the Ohio General Assembly was concerned with the effect of corporate restructuring on alcohol distribution within the state. While one provision of the termination statute provides that a "successor manufacturer" may terminate a franchise relationship absent just cause, see OHIO REV. CODE § 1333.85(D), another provision explicitly excludes "a manufacturer's sale, assignment, or other transfer of the manufacturer's product or brand to another manufacturer over which it exercises control" as a "just cause" rationale for termination, OHIO REV. CODE § 1333.85(B)(4). It is the Ohio courts that sit in the best position to determine whether the Ohio General Assembly intended the corporate scenario presented by S & S and Schieffelin & Co.'s relationship to fall within the confines of section 1333.85(D) or section 1333.85(B)(4).

The final factor differentiating these cases from those previously addressed in federal fora also pertains to the parties positions regarding the applicable law. Each prior federal case addressed "just cause" terminations, see OHIO REV. CODE § 1333.85, and, or, the parties' statutory duty to contract in "good faith," see OHIO REV. CODE § 1333.83. The Act explicitly defines "good faith," OHIO REV. CODE § 1333.82(E), and long-standing authority has established a definition of "just cause," see e.g., Bonanno, Inc. v. I.S.C. Wines of California, 56 Ohio App.3d 62, 564 N.E.2d 1105 (Ohio 2d App. Dist.1989). Thus, the former cases presented a straight-forward application of these definitions to the matters at hand. However, the instant cases present the multitude of issues discussed *supra*, as well as the question as to whether Schieffelin & Co. may provide notice that it is terminating a franchise under the "successor manufacturer" exception and later provide a "just cause" alternative for the termination. Consequently, even where these cases appear to share qualities with other scenarios addressed in federal fora, they nonetheless remain distinct.

For the foregoing reasons, this Court finds that the state of Ohio's interest in resolving the present cases substantially outweighs the defendant's right to have these matters heard in a federal court. A court has three options when it decides to refrain from the action under the Burford/Thibodaux abstention doctrine. The court may dismiss the action, remand the action to state court if it was commenced there, or stay the action. See Quackenbush, 517 U.S. at 721.

A federal court has the authority to decline to exercise its jurisdiction when it "is asked to employ its historic powers as a court of equity." Fair Assessment in Real Estate Assn., Inc. v. McNary, 454 U.S. 100, 120 (1981) (Brennan, J., concurring). "In cases where the relief being sought is equitable in nature or otherwise discretionary, federal courts not only have the power to stay

(5:05 CV 1927)

> the action based on abstention principles, but can also, in otherwise appropriate
> circumstances, decline to exercise jurisdiction altogether by either dismissing the
> suit or remanding it to state court." Quackenbush, 517 U.S. at 721.  As this Court
> has observed *supra*, the relief sought by the plaintiffs is effectively equitable in
> nature as the amended complaints seek preliminary and permanent injunctions, as
> well as declaratory relief.  Accordingly, dismissal / remand is proper.

Case No. 4:05cv834, Doc. No. 36 at 14-23.

The last paragraph of the lengthy quotation above is particularly applicable in the instant case where Gallo asks this Court to employ its equitable powers to issue a declaratory judgment on a matter that is peculiarly within the province of the state courts.  This Court declines to do so and concludes that it must abstain.

### III.  CONCLUSION

The Court has been of the view from the outset of this case that it was in the best interest of the parties to settle or, in the alternative, submit the controversy to mediation.  The Court continues to hold to that belief.

Once the Court reduces this Memorandum Opinion to a Judgment Entry, the controversy will not disappear.  Rather, this Court will lose jurisdiction to manage the case.  The plaintiff may elect to challenge this Court's ruling by an appeal to the Sixth Circuit which will delay a resolution of this controversy by at least a year; or, alternatively, the parties may become embroiled in litigation in the state courts.  In any event, legal costs will continue to increase along with uncertainty as to the ultimate outcome.

13

(5:05 CV 1927)

As a consequence, the Court will not publish a judgment entry in this case until after the status call scheduled for Tuesday, February 21, 2006 at 10:00 a.m.  In the interim, the Court urges the parties to continue to work toward a settlement of the controversy.

The Court also requests that a principal of each party attend the scheduled status call with complete settlement authority.

IT IS SO ORDERED.


  January 30, 2006                                  s/ David D. Dowd, Jr.
Date                                            David D. Dowd, Jr.
                                                U.S. District Judge

14